# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| DAVID L. ELKIND, an individual, | CASE NO. 1:24-cv-1790 |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF:** |
| v. | **1. The Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*;** |
| WINRED TECHNICAL SERVICES, LLC, a Virginia Limited Liability Company; and DOES 1 to 10, inclusive, | **2. The Virginia Telephone Privacy Protection Act, Va. Stat. § 59.1-514; and** |
| Defendants. | **3. Negligence.** |
| | (***JURY TRIAL DEMANDED***) |

Plaintiff David L. Elkind ("Plaintiff" or "Mr. Elkind") brings this complaint against Defendant WinRed Technical Services, LLC ("Defendant" or "WinRed") to remedy WinRed's having sent *more than 2,000 unsolicited text messages* to him—despite Mr. Elkind's numerous requests that WinRed stop messaging him—in clear violation of (i) the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* (the "TCPA"), and (ii) the Virginia Telephone Privacy Protection Act, Va. Stat. § 59.1-514 (the "VTPPA").  Mr. Elkind seeks monetary damages and injunctive relief.  He further alleges as follows:

## NATURE OF ACTION

1.     As the Supreme Court explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints.  For

COMPLAINT

nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

2. Unwanted telemarketing calls and text messages are intrusive: they interfere with people's lives, require unwanted delays as they are reviewed, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991 (the "TCPA"). *See* Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227 (2012)). As Congress explained, the law was a response to Americans "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers," *id.*, § 2(6), and sought to strike a balance between "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms," *id.*, § 2(9). To meet these ends, the TCPA imposed a number of restrictions on the use of automated telephone equipment, such as "robocalls." 47 U.S.C. § 227(b); *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 (2012). Put simply, the TCPA prohibits "any person within the United States" from using an "automatic telephone dialing system or an artificial or prerecorded voice" to call a phone number assigned to a "cellular telephone service." 47 U.S.C. § 227(b)(1).

3. Violations of the Federal Communications Commission's ("FCC") telemarketing regulations are also actionable under the TCPA. Among other things, one result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). "Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019) (citing 47 C.F.R. § 64.1200(c)(2)); *see also* 16 C.F.R. § 310.4(b)(iii)(B) ("It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission."). Barring an exception,

telemarketers are expected to check the list and avoid bothering those who have asked to be left alone.

4.     In addition to the national registry, companies like WinRed are required to keep individual Do-Not-Call lists, reflecting persons who have directly told the company that they do not wish to receive further solicitations (like Plaintiff).  *See* 47 C.F.R. § 64.1200(d) (requiring telemarketers to have or maintain a procedure for maintaining a do-not-call list; the regulation provides that businesses are prohibited from "initiat[ing] . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."); *see also Powers v. One Techs., LLC*, No. 3:21-cv-2091, 2022 WL 2992881, at *2 (N.D. Tex. July 28, 2022) (finding "that § 64.1200(d) was issued to further the privacy right in § 227(c)," so "the private right of action contained in § 227(c) reaches violations of § 64.1200(d)" (footnote omitted)); 47 U.S.C. § 227(c)(5) (claims can be brought by "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection.").

5.     "This private cause of action [under the TCPA] is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer*, 925 F.3d at 650.

## PARTIES

6.     Plaintiff David L. Elkind is, and at all relevant times was, an individual residing in Arlington, Virginia.

7.     Defendant WinRed Technical Services, LLC is, and at all relevant times was, a Virginia limited liability company with its principal place of business in Arlington, Virginia.

8.     Defendant DOES 1 to 10 are alter egos, affiliates, related companies, and/or agents of WinRed and/or parties otherwise responsible for the actions and omissions alleged in this Complaint.  At this time, Plaintiff does not know the true names and forms of Does 1 to 10 and therefore sues these Defendants by fictitious names.  Plaintiff alleges that these Doe Defendants are responsible in some manner for the acts and omissions alleged in this Complaint and that Plaintiff's damages were caused by these Doe Defendants.  Once the true identities and forms of these Doe Defendants are ascertained, Plaintiff will amend his Complaint accordingly.

## JURISDICTION AND VENUE

9.     ***Subject Matter Jurisdiction.***  This Court has subject matter jurisdiction over Plaintiff's TCPA claim pursuant to 28 U.S.C. § 1331 because that claim arises under the laws of the United States, specifically, 47 U.S.C. § 227.  This Court also has supplemental jurisdiction over the state-law claims because they relate to the same illegal telemarketing conduct.

10.     ***Personal Jurisdiction.***  This Court has personal jurisdiction over WinRed because its corporate headquarters are located in Arlington, Virginia, and also because WinRed does business throughout this judicial district and the State of Virginia.

11.     ***Venue.***  Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1391 because WinRed:

      a)    is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District;

      b)    does substantial business within this District; and

      c)    is subject to personal jurisdiction in this District because (i) its corporate headquarters are here, (ii) it has availed itself of the laws and markets within this District, and (iii) the injury to Plaintiff occurred within this District.

**TCPA BACKGROUND**

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.     In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]"  Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §2(5), Dec. 20, 1991, 105 Stat. 2394 (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls and Texts

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

14.     Specifically, the TCPA prohibits the use of an automated telephone dialing system to make any telemarketing call or send any telemarketing text message to a wireless number in the absence of an emergency or the prior express written consent of the called party.  *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act*, 27 FCC Rcd. 1830, 1831 (2012 order).

15.     "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(12).

16.     "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."  47 C.F.R. § 64.1200(f)(8).

17.     Under the TCPA, the burden is on the seller to have obtained and documented, and to prove, prior express written consent.

COMPLAINT

18.    The TCPA also requires that those who make telemarketing calls have an internal written policy pertaining to "Do Not Call" requests.  *See* 47 C.F.R. § 64.1200(d) (requiring telemarketers to have or maintain a procedure for maintaining a do-not-call list; the regulation provides that businesses are prohibited from "initiat[ing] . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."); *see also Powers*, 2022 WL 2992881, at \*2 (finding "that § 64.1200(d) was issued to further the privacy right in § 227(c)," so "the private right of action contained in § 227(c) reaches violations of § 64.1200(d)" (footnote omitted)).  The TCPA includes *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act*, 27 FCC Rcd. 1830, 1831 (2012 order).

19.    Finally, in 2003, the FCC declared that the TCPA's prohibitions also apply to text messages.  *See Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd., 1, 101 (2003) (stating that the TCPA "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service").  Courts have agreed with this.  *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (holding that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)"); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021) (holding that one text message is enough of an injury for TCPA standing purposes); *Van Patten v. Vertical Fitness Grp., L.L.C.*, 847 F.3d 1037, 1043 (9th Cir. 2017) (holding that one text message is enough of an injury for TCPA standing); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462-63 (7th Cir. 2020) (same).

## THE VTPPA PROHIBITS SIMILAR CONDUCT

20.    Similar to the TCPA, the VTPPA was enacted to protect Virginia consumers from unwanted and harassing telemarketing.  As relevant here, the statute provides:

A. No telephone solicitor shall initiate, or cause to be initiated, a telephone solicitation call to a telephone number when a person at such telephone number previously has stated that he does not wish to receive a telephone solicitation call made by or on behalf of the person on whose behalf the telephone solicitation call is being made. Such statement may be made to a telephone solicitor or to the person on whose behalf the telephone solicitation call is being made if that person is different from the telephone solicitor. Any such request not to receive telephone solicitation calls shall be honored for at least 10 years from the time the request is made.

B. No telephone solicitor shall initiate, or cause to be initiated, a telephone solicitation call to a telephone number on the National Do Not Call Registry maintained by the federal government pursuant to the Telemarketing Sales Rule, 16 C.F.R. Part 310, and 47 C.F.R. § 64.1200.

*See* Va. Stat. § 59.1-514(A) & (B).

21.    The VTPPA's definition of a "[t]elephone solicitation call" explicitly includes "any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth." *Id.*, § 59.1-510.

## **FACTUAL ALLEGATIONS**

22.    WinRed is a "person" as the term is defined by 47 U.S.C. § 153(39).  It is also a telephone solicitor under the VTPPA.  *See* Va. Stat. § 59.1-510 ("'Telephone solicitor' means any person who makes or initiates, or causes another person to make or initiate, a telephone solicitation call on its own behalf or for its own benefit or on behalf of or for the benefit of a seller.").

23.    According to its website, WinRed "is the #1 fundraising technology used by conservatives.  Donors from across the country can easily connect with causes and candidates that they support."  *See* https://support.winred.com/en/articles/3056005-what-is-winred.  In other words, WinRed is not itself a tax-exempt political organization (nor

COMPLAINT

even a "political organization"). Rather, on information and belief, WinRed is a for-profit technology business platform that facilities payments to political candidates.

24.    Plaintiff's telephone number, 703-xxx-9999, is a cellular telephone line, which serves as Plaintiff's residential telephone. Plaintiff's telephone number is also registered on the National Do Not Call Registry, and has been continuously since September 16, 2006.

25.    Beginning this year on or around January 5, 2024, WinRed began sending unsolicited marketing text messages to Plaintiff. Given the total number of messages WinRed sent to Plaintiff—***more than 2,000***—it would be too voluminous to include each message here. Each message included a sales pitch requesting that Plaintiff use WinRed's platform to send money to political candidates throughout the country. Each message ended with: "Paid for by WinRed. Not authorized by any candidate or candidate's committee. WinRed.com. Powered by WinRed."

26.    Plaintiff did not provide his prior express written consent to receive WinRed's telemarketing solicitations, nor does Plaintiff have any relationship with WinRed.

27.    Beginning with the first text, Plaintiff instead repeatedly requested not to receive any more messages from WinRed, explicitly telling WinRed, "STOP," often accompanying the request with a comment disparaging the solicitation. When the unwanted texts continued, Plaintiff used profanity. But the texts continued without delay. Between January 5 to March 15, 2024, Plaintiff made this request *approximately 20 times*. He made many subsequent similar requests.

28.    Plaintiff's explicit (and numerous) requests that WinRed "STOP" messaging him constituted a directive that WinRed stop texting Plaintiff, and WinRed should have placed Plaintiff on its internal do-not-call list. Yet, despite Plaintiff's numerous requests, WinRed continued sending Plaintiff unsolicited marketing text messages.

29.    Up through the filing of this Complaint, WinRed has sent ***more than 2,000 unsolicited text message solicitations*** to Plaintiff, which WinRed sent even *after* Plaintiff's repeated requests that WinRed stop contacting him.

## CAUSES OF ACTION

### COUNT ONE

### Violations of the TCPA

### (47 U.S.C. § 227(b)(1)(A)(iii))

30.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

31.     Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by initiating, or having one of its vendors initiate on its behalf, more than 2,000 text messages that constitute telemarketing to Plaintiff's cellular telephone number using an automated telephone dialing system without his prior express written consent.

32.     Defendant's violations were willfully or knowingly committed, which justifies an award of treble damages. *See* 47 U.S.C. § 227(b)(3)(C) (if a court finds that a defendant has "willfully or knowingly" violated the TCPA, the court may award treble damages in the amount of $1,500 per violation).

33.     On information and belief, Defendant has been sued under the TCPA at least two other times, such that it is aware of its obligations to comply with it. Moreover, that WinRed sent Plaintiff so many text messages even *after* Plaintiff's repeated requests that it stop contacting him alone evidences it violated the TCPA willfully or knowingly.

### COUNT TWO

### Violations of the TCPA

### (47 C.F.R. § 64.1200(c))

34.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

35.     "The TCPA . . . restricts the telephone solicitations that can be made [to] number[s]" on the Do-Not-Call registry. *Krakauer*, 925 F.3d at 649 (citing 47 C.F.R. § 64.1200(c)(2)); *see also* 16 C.F.R. § 310.4(b)(iii)(B) ("It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound

telephone call to a person when . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.").

36.     Defendant violated the TCPA and its implementing regulations by making two or more telemarketing calls within a 12-month period to Plaintiff, whose number was registered on the National Do Not Call Registry at all relevant times.

37.     Because Defendant failed to meet these requirements in violation of 47 C.F.R. § 64.1200(c), Defendant violated 47 U.S.C. § 227(c)(5).

38.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5) (i.e., more than 2,000 violations).  However, as alleged above, Defendant's violations were negligent and/or willful, which justifies an award of treble damages.  *See* 47 U.S.C. § 227(b)(3)(C).

## COUNT THREE

### Violations of the TCPA

### (47 C.F.R. § 64.1200(d))

39.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

40.     47 C.F.R. § 64.1200(d)(1)–(3) requires persons or entities that make "calls for telemarketing purposes" to have certain mandated safeguards, including a written policy, available upon demand, for maintaining a do-not-call list.  47 C.F.R. § 64.1200(d)(1).

41.     47 C.F.R. § 64.1200(d)(2) provides that persons who are engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.  Courts have found violations of 47 C.F.R. § 64.1200(d)(2) where defendants continue to make unsolicited phone calls despite a plaintiff's request to be placed on a do-not-call list.

42.     Defendant failed to fulfill these requirements—including by continuing to contact Plaintiff despite his numerous requests to be placed on a do-not-call list—resulting in more than 2,000 violations against Plaintiff.

COMPLAINT

43. Because Defendant failed to meet these requirements in violation of 47 C.F.R. § 64.1200(d), Defendant violated 47 U.S.C. § 227(c)(5).

44. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5) (i.e., more than 2,000 violations). However, as alleged above, Defendant's violations were negligent and/or willful, which justifies an award of treble damages. *See* 47 U.S.C. § 227(b)(3)(C).

**COUNT FOUR**

**Violations of the VTPPA**

**(Va. Stat. § 59.1-514)**

45. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

46. It is a violation of the VTPPA to "initiate, or cause to be initiated, a telephone solicitation call to a telephone number when a person at such telephone number previously has stated that he does not wish to receive a telephone solicitation." *See* Va. Stat. § 59.1-514(A). It is also a violation of the VTPPA to "initiate, or cause to be initiated, a telephone solicitation call to a telephone number on the National Do Not Call Registry maintained by the federal government . . ." *Id.*, subd. (B).

47. A "[t]elephone solicitation call" means "any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment . . ." *Id.*, § 59.1-510.

48. Plaintiff's telephone number, 703-xxx-9999, is a cellular telephone line, which serves as Plaintiff's residential telephone. Plaintiff's telephone number is also (i) registered on the National Do Not Call Registry (and has been continuously since September 16, 2006), and (ii) assigned to a Virginia area code. Moreover, Plaintiff is and at all relevant times was "a resident of the Commonwealth." *Id.* And as alleged above, Defendant sent text messages to Plaintiff (more than 2,000) for the purpose of offering or

11

COMPLAINT

advertising any property, goods, or services for sale, lease, license, or investment . . ." *Id.* These were sent after Plaintiff advised WinRed that he did not want to receive the text messages.

49.     In violation of the VTPPA, Defendant made and/or knowingly allowed telephone solicitation calls to be made to Plaintiff (i) without his prior express written consent, (i) despite that Plaintiff's wireless telephone with a Virginia area code was (at all relevant times) registered on the National Do Not Call Registry, and (iii) despite that Plaintiff repeatedly stated that he does not wish to receive Defendant's telephone solicitations.

50.     As a result of Defendant's violations of the VTPPA, Plaintiff is entitled to "damages in the amount of $500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation." *Id.*, § 59.1-515(A).  However, as alleged above, Defendant's violations were willful, and so the Court may "increase the amount of any damages awarded for a first or second violation under subsection A to an amount not exceeding $5,000." *Id.*, subd. (B).

51.     Moreover, Plaintiff is entitled to attorneys' fees and costs.  *Id.*, subd. (C).

## COUNT FIVE

### Negligence

52.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

53.     The TCPA and VTPPA reflect the principle that a party should not "spam" another one with unwanted phone calls and texts.  Despite this, WinRed sent Plaintiff more than 2,000 texts even though Plaintiff reacted angrily to receiving the very first one after stating, "Stop."

54.     In reaction to many subsequent texts, Plaintiff again reacted, with anger, stating, "Stop," and then adding a pejorative.  WinRed merely sent more texts in response. Even when Plaintiff responded to texts by stating "Stop" and using profanity, WinRed kept sending texts to Plaintiff.

12

COMPLAINT

55.     In response to about half of Plaintiff's objections to texts, WinRed wrote, "You have successfully unsubscribed."  That statement only applied to the phone number used for that specific text, not to the dozens of other phone numbers that WenRed has used to spam Plaintiff.

56.     WinRed had a duty not to send unwanted texts to Plaintiff.  WinRed breached this duty by sending Plaintiff more than 2,000 unwanted texts.

57.     The breach of duty by WinRed created damage to Plaintiff in many ways. Plaintiff was forced to spend substantial time reviewing at least part of every text to determine that it was of no interest to Plaintiff.  The texts also offended Plaintiff by forcing him to read unwanted lies and other baseless accusations.  By continuing to send Plaintiff texts after Plaintiff made objections to them, WinRed also damaged Plaintiff by making him feel that he was powerless to stop an unwanted barrage by WinRed.

58.     As a direct and proximate result of WinRed's breach of its duty to Plaintiff, an appropriate measure of damages are the statutory damages under the TCPA and VTPPA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests the following relief:

A.     An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from continuing to violate the TCPA;

B.     That the Court enter a judgment awarding Plaintiff his statutory damages (including treble damages under the TCPA, and $5,000 per violation under the VTPPA), plus attorneys' fees and costs, together with any actual, consequential, and nominal damages as allowed by law in an amount to be determined;

C.     Leave to amend this Complaint to conform to the evidence presented at trial; and

D.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

13
COMPLAINT

1

## DEMAND FOR JURY TRIAL

2

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure

3

38(b) on all claims so triable.

4

DATED:  October 9, 2024                    Respectfully submitted,

5

6

*/s/ William Robinson*

William Robinson

7

VSB: 76098

319 N. Piedmont St., #1

8

Arlington, VA 22203

9

ph. 703-789-4800

wprlegal@gmail.com

10

11

**KJC LAW GROUP, A.P.C.**

12

13

By:    */s/ Kevin J. Cole*

14

Kevin J. Cole, *Pro Hac Vice* Forthcoming

**KJC Law Group, A.P.C.**

15

9701 Wilshire Blvd., Suite 1000

16

Beverly Hills, CA  90212

Telephone: (310) 861-7797

17

e-Mail: kevin@kjclawgroup.com

18

19

*Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

14

COMPLAINT